STATE OF NORTH CAROLINA
v.
CHRISTOPHER JOHN CROCKER
No. COA08-1062
Court of Appeals of North Carolina.
Filed June 16, 2009
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General LaToya B. Powell, for the State.
Winifred H. Dillon for defendant-appellant.
ROBERT N. HUNTER, JR., Judge.
Christopher John Crocker ("defendant"), 15 years old at the time of his arrest for second-degree murder and related charges stemming from a car chase, argues the district court erred in transferring his cases to the superior court to be tried as an adult, and that his attorney was ineffective for failing to challenge the transfer. He reasons that due to this error, the superior court lacked subject matter jurisdiction. He also assigns error to the trial court's exclusion of his proffered expert witness testimony regarding his diminished capacity due to age. We find no error.

I. Facts
On the morning of 9 August 2006, defendant, who had not slept the night before, decided to visit his cousin in South Carolina. Failing to inform his father of his decision, he took his father's truck, placing duct tape over the license plate numbers and drove to a convenience store where he drove off after pumping $81.42 of gas into the truck. His failure to pay was observed by Bobby Power, the store clerk, who got in his vehicle and pursued defendant through the surrounding residential neighborhood. The two drivers met when Mr. Power blocked defendant's exit from a neighborhood street by placing his vehicle across both lanes of the road.
When Mr. Power refused to move, defendant pointed a .22 caliber pistol at him and drove around Mr. Power's car into a ditch on the side of the road. This maneuver caused defendant's car to bounce, triggering the pistol to discharge which cracked the truck's windshield. Neither driver was deterred by this event, and the chase at speeds of between 65 and 70 miles per hour continued.
Defendant came upon a stop sign and proceeded through it without stopping, barely missing another vehicle. When Mr. Power came upon this intersection, he pulled over and urged the driver to call 911. Afterward Mr. Power sped off in hot pursuit of defendant. After twenty minutes, Granite Quarry Police Officer Kenneth Wayne Trivett pulled behind defendant and turned on his blue lights. At this point Mr. Power left the chase. Defendant accelerated his speed to between 80 and 90 miles per hour. Followed by Officer Trivett, defendant ran another stop sign, crossed the center lane on multiple occasions, and ignored Officer Trivett's blue lights. During this time, he passed a car on the left-hand side of the road in a no-passing zone. Tragically, Ms. Marsha Setzer Ludwick, was driving in the opposite direction. Defendant's vehicle came over the hill crashing headlong into Ms. Ludwick's car, killing her. Undeterred, defendant leapt out and escaped into the woods where he was later found hiding in a shed.
On 9 August 2006, defendant was charged by juvenile petitions for the following offenses: second-degree murder; speeding to elude arrest; misdemeanor assault by pointing a gun; resisting an officer, misdemeanor larceny; failing to stop/yield the right-of-way; failing to drive on the right; operating a motor vehicle without a license; failure to yield to an emergency vehicle; driving left of center; and concealing a license plate. The Honorable Kevin Eddinger transferred defendant's cases to superior court by order entered 9 February 2007. On 26 February 2007, defendant was indicted on all offenses. Defendant was tried as an adult at the 7 January 2008 Criminal Session of the Rowan County Superior Court, with the Honorable Christopher Collier, Jr., presiding.
Prior to the jury charge, defendant pled guilty to all charges except for second-degree murder, and was sentenced to 6 to 8 months' imprisonment for these consolidated charges. The jury found defendant guilty of second-degree murder on 10 October 2008 and the court imposed a concurrent 132 to 168 months' sentence. Defendant appeals.

I. Transfer to Superior Court
Defendant argues that the superior court lacked jurisdiction because the district court erred in transferring his case there. "The decision to transfer a juvenile's case to superior court lies solely within the sound discretion of the juvenile court judge and is not subject to review absent a showing of gross abuse of discretion." State v. Green, 348 N.C. 588, 595, 502 S.E.2d 819, 823 (1998), cert. denied, 525 U.S. 1111, 142 L. Ed. 2d 783 (1999) An abuse of discretion is established only upon a showing that a court's actions "are manifestly unsupported by reason" or "so arbitrary that it could not have been the result of a reasoned decision." White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). Defendant has not shown an abuse of discretion.
A district court may transfer a juvenile delinquency case to superior court for the juvenile to be tried as an adult when it finds probable cause that the juvenile committed the alleged offense, that the juvenile was at least 13 at the time of the alleged offense, and that the alleged offense would be a felony if it were committed by an adult. N.C. Gen. Stat. § 7B-2200 (2007). When considering transfer, "the court shall determine whether the protection of the public and the needs of the juvenile will be served by transfer of the case to superior court[.]" N.C. Gen. Stat. § 7B-2203(b) (2007). In its transfer order, the court must specify the reasons for its decision. In re E.S., ___ N.C. App. ___, ___, 663 S.E.2d 475, 477, disc. review denied, 362 N.C. 681, 670 S.E.2d 231 (2008). When deciding whether to transfer a juvenile, the court shall consider the following factors:
(1) The age of the juvenile;
(2) The maturity of the juvenile;
(3) The intellectual functioning of the juvenile;
(4) The prior record of the juvenile;
(5) Prior attempts to rehabilitate the juvenile;
(6) Facilities or programs available to the court prior to the expiration of the court's jurisdiction under this Subchapter and the likelihood that the juvenile would benefit from treatment or rehabilitative efforts;
(7) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner; and
(8) The seriousness of the offense and whether the protection of the public requires that the juvenile be prosecuted as an adult.
N.C. Gen. Stat. § 7B-2203(b).
Defendant argues that the district court failed to consider all of the required factors and claims that the transfer order is devoid of any findings that the district court considered the needs of the juvenile. Although the district court is required to specify its reasons for the transfer, defendant fails to cite any authority which requires the court to make specific factual findings considering the needs of the juvenile. In its transfer order, the district court found that "the protection of the public and the needs of the juvenile" would be served by transferring the case to superior court. The transfer order addressed each statutory factor and stated the following reasons for its ruling:
1. The juvenile was 15 years of age at the time of the offense and is now 16 years old.
2. Dr. Nobles indicated the juvenile was immature . . . . The juvenile met the criteria for deficit disorder in the past, but not at present. . . . The court finds that the juvenile, through his interview, displays a mature understanding of his actions . . . .
3. The juvenile's testing in 2002 revealed at least average or above average on his IQ testing . . . . [T]he court finds that the juvenile's intellectual functioning . . . is at least commensurate with his chronological age.
4. The juvenile had a prior record . . . followed by a 7-8 month commitment to a youth camp [in South Carolina]. . . . [T]he court finds this was a significant effort on the part of authorities in South Carolina to reform and rehabilitate, which did not materially affect the juvenile in light of his actions here.
5. The court finds that should the juvenile be found delinquent for a B2 felony at this point, he would serve a time of actual commitment not to exceed his 19th birthday, less than 3 years from now. Given the horrendous actions of the juvenile the court finds that available services would be inadequate and the likelihood of success would be small. The court notes in the Dorothea Dix report that individuals with profiles similar to the juvenile are likely resistant to mental health intervention.
6. This offense was committed in an aggressive, violent and willful manner . . . [and] resulted in the death of a member of this community. The court finds that the protection of the public requires that the juvenile be prosecuted as an adult. . . . [T]he evidence of his guilt is very high. This is not the type of crime committed by a child.
The district court clearly considered all required factors and specified its reasons for the transfer. The factual findings, contained in the order, indicate that the district court considered the juvenile's needs by finding that defendant demonstrated a mature understanding of his actions, exhibited average to above average intelligence, committed the offense in an aggressive and violent manner, and the potential for defendant's rehabilitation was very low.
Because the district court considered all relevant factors, pursuant to N.C. Gen. Stat. § 7B-2203(b), and stated its reasons for transferring defendant's case, we do not find an abuse of discretion. Thus, the superior court had jurisdiction over defendant's case, and the assignment of error is overruled.

II. Ineffective Assistance of Counsel
Defendant claims that his attorney's failure to appeal the transfer order to the superior court under N.C. Gen. Stat. § 7B-2603 constituted ineffective assistance of counsel. See N.C. Gen. Stat. § 7B-2603(a) (2007) (providing that transfer orders in juvenile matters should be appealed to superior court). We disagree. "[C]laims of ineffective assistance of counsel should be considered through motions for appropriate relief and not on direct appeal."State v. Stroud, 147 N.C. App. 549, 553, 557 S.E.2d 544, 547 (2001), cert. denied, 356 N.C. 623, 575 S.E.2d 758 (2002). An ineffective assistance of counsel claim may be brought on direct review only when "the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." State v. Fair, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001), cert. denied, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002).
To establish ineffective assistance of counsel, defendant must satisfy a two-prong test. "First, he must show that counsel's performance fell below an objective standard of reasonableness." State v. Blakeney, 352 N.C. 287, 307, 531 S.E.2d 799, 814-15 (2000), cert. denied, 531 U.S. 1117, 148 L. Ed. 2d 780 (2001), cert. denied, 359 N.C. 192, 607 S.E.2d 650 (2004). Second, defendant must show that "the error committed was so serious that a reasonable probability exists that the trial result would have been different absent the error." Id. at 307-08, 531 S.E.2d at 815.
As discussed above, defendant's contention that the trial court erred in transferring his case to superior court is unfounded. As such, his attorney's failure to appeal the transfer order to superior court did not constitute ineffective assistance of counsel as it is improbable that appealing to superior courtwould have resulted in a different outcome. The assignment of error is overruled.

III. Motion to Suppress Evidence
Defendant argues that the trial court erred in granting the State's motion to suppress in limine to exclude the testimony of defendant's psychological expert, Dr. Jerry Noble. When reviewing a trial court's ruling on a motion in limine, this Court's standard of review is abuse of discretion. Heatherly v. Industrial Health Council, 130 N.C. App. 616, 619, 504 S.E.2d 102, 105 (1998). We also review the admissibility of an expert's opinion for an abuse of discretion. Howerton v. Arai Helmet, Ltd., 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004).
On 17 December 2007, defendant notified the State that he intended to argue the defense of diminished capacity at trial and offer the testimony of his psychological expert, Dr. Jerry Noble. The State filed a motion to suppress in limine arguing that such testimony was irrelevant as diminished capacity is not a defense to second-degree murder. After conducting a hearing on the matter on 7 January 2008, the Honorable Christopher Collier, Jr., granted the State's motion. We need not address defendant's assignments of error on this matter, as defendant has not met his burden of showing that, if Dr. Noble's testimony had been admitted, a different result would have been reached at trial. See N.C. Gen. Stat. § 15A-1443(a) (2007).
Second-degree murder is the "unlawful killing of a human being with malice but without premeditation and deliberation." State v. Snyder, 311 N.C. 391, 393, 317 S.E.2d 394, 395 (1984). Malice may be inferred "`when an act which is inherently dangerous to human life is done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief.'" Id. (quoting State v. Reynolds, 307 N.C. 184, 191, 297 S.E.2d 532, 536 (1982)). In order to prove malice in second-degree murder prosecutions involving automobile accidents, "it [is] necessary for the State to prove only that defendant had the intent to perform the act of driving in such a reckless manner as reflects knowledge that injury or death would likely result, thus evidencing depravity of mind." State v. Rich, 351 N.C. 386, 395, 527 S.E.2d 299, 304 (2000).
Fleeing from the police, in itself, constitutes malice. State v. Lloyd, 187 N.C. App. 174, 180, 652 S.E.2d 299, 302 (2007). Driving dangerously or without a valid license also provides evidence that a defendant acted with a "`mind regardless of social duty' and with a `recklessness of consequences.'" State v. Bethea, 167 N.C. App. 215, 219-20, 605 S.E.2d 173, 177 (2004) (citations omitted) (holding that there was sufficient evidence of malice where the defendant was driving with a revoked license, fleeing from the police, running through stop signs, and driving above 90 miles per hour), cert. denied, 362 N.C. 88 (2007). Furthermore, taking a car without permission indicates a mind "bent on mischief." State v. Byers, 105 N.C. App. 377, 382, 413 S.E.2d 586, 589 (1992). Defendant agrees that diminished capacity is not a defense to second-degree-murder but argues that Dr. Noble's testimony about defendant's susceptibility to acting impulsively negates the element of malice. During defendant's offer of proof, Dr. Noble opined that because defendant was 15 years old, "immaturities in development of brain pathways" compounded by sleep deprivation made him more susceptible to acting impulsively. He diagnosed defendant with attention deficit hyperactivity disorder, which made him susceptible to impulsive acts and affected his ability to foresee the consequences of his actions.
In the case sub judice, defendant took his father's truck without permission and did not have a driver's license. Furthermore, as part of his plan to steal gas, he covered his license plate with duct tape to avoid getting caught. He intentionally fled to elude police officers, during which he ran stop signs, crossed the center line, passed a vehicle in a no passing zone, and reached speeds of up to 90 miles per hour. Given this overwhelming evidence of malice, defendant has not shown that the impact of Dr. Noble's testimony would have altered the outcome. The assignment of error is overruled.

IV. Conclusion
We conclude that the superior court properly had jurisdiction of defendant's case, and therefore, defendant's attorney's failure to appeal the transfer order did not constitute ineffective assistance of counsel. There was no prejudicial error in excluding the testimony of defendant's psychological expert. No error.
Judges HUNTER, Robert C., and CALABRIA concur.
Report per Rule 30(e).